Good morning, Your Honors. My name is Evan Murray. I'll be arguing for the petitioner this morning. May it please the Court, the case before us presents a simple and straightforward issue. Why isn't it controlled by he? It's not a change in country conditions, it's a change in his conditions, and then he's therefore bound by the deadline. Well, Your Honor, in this particular case, we have a unique set of circumstances where clearly the petitioner has a change of personal conditions, but because of the police obtained various materials that petitioner had sent, and police became aware that petitioner was affiliated in the United States with what is referred to in China as the Shouters. Those people don't call themselves the Shouters in the United States. Let's assume that the Chinese persecute the Shouters and that he is a bona fide member of the Shouter Church at this point. As I understand it, he joined it while he was in California. He was not a Shouter in China. That's correct, Your Honor. That's correct. And it was fairly recent that he became a Shouter. I mean, more recent than his original asylum claim here in the United States. But what the petitioner is asserting is that because of the events that took place in China and the fact that they were persecuting the Shouters for years, if they do. That's correct, Your Honor. But what also took place is the police in China are trying to assert control over petitioner in the United States by telling the petitioner's brother, you tell him that he needs to disassociate himself with the Shouters. And if he comes back here to China, he's in big trouble if he has association with those people. Petitioner asserts, Your Honor, that that constitutes also a change of country conditions. Therefore, it's not just merely a change of personal circumstances. And therefore, the bar that the government asserts would not apply in this instance. Now, I understand in one sense your argument. That is to say, the circumstances in China clearly have changed because they are aware that he has joined the Shouter Church. They're changed in some call it persecution of his brother. And in that sense, there have been changes in the circumstances in China specifically manifested with respect to his brother. Why is that change circumstances within the meaning of the regulation? That is to say, these changes are very specific to this petitioner and his brother. The general position of China with respect to the Shouters appears not to have changed. That's true, Your Honor. That's true. The change has changed. The change is in regard specifically to petitioner's person. And the fact that he now has a very valid fear of persecution if he returns to his country. But how is that different from he? And he, of course, is not religion. It's rather having children. Two more children are had in this country. And that changes the circumstances in China in the sense that if they return, at least so they allege, if they return to China with three children, the circumstances in China for them will have changed. That's true, Your Honor. So how is this case different from he? Well, it's different from he in that he specifically isolated itself purely to a procedural issue. And he also addressed the fact that we have a much greater issue. But he also, Your Honor, was very specific in quoting and talking about the Second Circuit case of Xu Yonguo v. Gonzales where the issue in that particular case was in a situation where you have new circumstances and new evidence. Is the BIA required to consider that new circumstances and new evidence? And the case of Xu Yonguo, which he cites specifically, requires the BIA to consider this new evidence. Mr. Murray, you know what worries me is if you're right, then I guess the rule would be that anyone can voluntarily change his personal circumstances in an effort to get asylum. Your Honors, now I think we've broached the larger context. And the Court specifically invited us to discuss the issue of he, but I would like to do that also in context with this brand new BIA case, CWL. And I would like to suggest to the Court that the brand new case of CWL clearly and graphically illustrates the problem that we have with not only the immigration law, but the various — How about getting to the point of CWL? I don't know what it is. If I may, Your Honor, just indulge me for one second. The major issue here — What's CWL? I'm sorry. CWL, NRA CWL, is a brand new BIA case that just came down last week. And last Wednesday, government counsel specifically — What does it hold? I'm sorry? What does it hold? It holds that new asylum claims are purely a procedural issue, not a substantive issue, and therefore the procedural issue precludes Petitioners from asserting new asylum claims in any form other than a motion to reopen. But this is — this is the specific problem that I'm trying to address, Your Honors, because what we have is a huge conflict in the immigration law between the substantive law and the procedural law. I guess I'm not — I'm not sure I understood your answer to the point I was trying to make, which is I'm concerned that this can be an abusive process, that people can voluntarily change their personal circumstances in aid of an asylum application. Do you have a comment on that? Yes, I do, Your Honor. Specifically, it could be argued that Petitioners specifically joined a church for the very purpose of contravening the immigration procedural issues and being able to assert a new asylum claim. The same could be argued on the big cases, the numerous cases of where children, subsequent children are born here in the United States, and one of the courts specifically argued that they're having children for the specific purpose of contravening the law. Well, that's ridiculous. Counsel, let me ask you about an extension of that that concerns me. Right now, most people who are ordered deported are not immediately clapped in jail. They're given 30 days to disperse and leave. It strikes me that if what you can do is basically not leave, hide, not comply with the order of deportation, and then during the interim change your personal circumstances, then what's going to happen is people aren't going to be released on bail anymore. They're just going to be clapped in jail once they're ordered deported, because the INS will know that they're not going to, they can fiddle with it after the deportation order and after the 30 days and the 90 days in the rig. Your Honor, I agree with that, and this is what I was trying to address in regard to Judge Silverman. There's two sides to that argument. The one side is that the courts have decided that these people can intentionally change their circumstances to give themselves a benefit with the immigration law. The other side of that argument is, how can we say you can't have any more children here in the United States, because if you do that, that changes your immigration status. You can't join a church here in the United States, because if you do that, you can't. You can join any church you want. You can inseminate as many people as you want. You can have as many children as you want, but you just can't say that when you voluntarily do these things, it gives you an advantage in the asylum case. The problem, Your Honor, is this. The fact that those things happen in people's lives changes their fear of persecution in China, because the fact that those things happen in their lives does, in fact, affect what happens to them if they return to China. That sounds like an argument that goes not only to this case, but also to he. Absolutely, Your Honor. But I think you're saying that he's wrong, but we're stuck with it unless it goes en banc. Here's what I'm suggesting. I'm not suggesting that he's case, the he case, is wrong. I'm suggesting that the he case didn't go far enough. The he case, and very specifically in the holding of the he case, said we're only isolating this to the procedural issue. We're not addressing the substantive issue. And, in fact, in a huge footnote in the he case, the he case specifically addressed the substantive issue, saying that because of these changed circumstances, they have an opportunity substantively. And he even cites several of the code sections that discuss the substantive law that says change in personal circumstances gives them a new opportunity. I would cite footnote number nine in the he case, which specifically addresses this issue. And I would assert to the court that what the he case needs to do, or what the courts need to do, and this is not just for the Ninth Circuit, but also all of the circuits, they need to address the conflict between the procedural law. And most of the cases that have come down recently have dealt specifically with the procedural law, but have not addressed the greater issue of the substantive law. The substantive law in the immigration cases clearly provides, and, in fact, Your Honors, I would – I know that I'm over my – But under footnote nine, could your client file a new asylum application? No, Your Honor. Why is that? Your Honor, I was not – I was not representing my client. Another attorney represented my client in this matter. I'm merely arguing the case. I cannot address the issue of why that was not done, because I'm not privy to that. Could he do it now? I'm sorry? Could he do it now? I would certainly urge that he should. However, the problem now is a time issue. But I would certainly suggest that he – perhaps he should apply for a new asylum issue – I mean a new asylum application. The problem, though, is this new BIA case that I cited just as of last Wednesday, which – which I think only exacerbates the situation and creates a greater mess, although to their – to their credit, in this case CWL by the BIA last Wednesday, they cited two cases, a Second Circuit case and a Seventh Circuit case, which – which supports their position that it's purely a procedural issue. And then they went on to cite three other cases, and the Ninth Circuit case of the – Well over time. Okay. May I finish this – this – this – Not the whole discussion. No. Just this comment. Finish your sentence. They went on to – to cite three cases, a Ninth Circuit case, a Sixth Circuit case, and a Second Circuit case that – that addresses the greater issue of substance, and yet they held in favor of the procedural issue instead of the substantive issue, and I would submit, Your Honors, that – that the substantive issue needs to be addressed. Thank you, counsel. Thank you, Your Honors. Counsel. May it please the Court, my name is Ashley Hahn, and I represent the respondent in this case, Acting Attorney General Peter D. Keisler. This is a case in which the agency, the Board of Immigration Appeals, reasonably found that the petitioner, Mr. Lee, had filed his motion to reopen untimely and did not meet any of the exceptions to untimeliness. The Board was not unreasonable in finding that Mr. Lee's second theory for asylum, which he put forth three years after his initial application, was based on circumstances entirely of his own making, and not changed circumstances arising in his country of origin. This was after a complete adjudication of his initial asylum application. On a motion to reconsider, Mr. Lee then reiterated his previous arguments to the Board and did not specify any errors of fact or law in the Board's decision in his motion to reopen. The Board of Immigration Appeals did not abuse its discretion in denying Mr. Lee's motion to reopen, and that decision should only be reversed if it was arbitrary, irrational, or contrary to law, which in this case it was not. The regulations provide that a motion to reopen must be filed within 90 days of the Board's decision, and in this case, Mr. Lee filed his motion to reopen three years after the Board's decision. How realistic is the suggestion in footnote 9 of the He case that while there are no changed country circumstances that will justify or excuse the late filing of a motion to reopen, nonetheless it's open to the petitioner to file a new asylum application? How realistic is that? Footnote 9 in He, which is dicta, did suggest a successive asylum application. And I'm asking, is that just a phantom out there, or is that a real possible remedy? Matter of CWL, which counsel addressed, which the Board decided on October 31st, held that the statutory and regulatory language permitting a successive asylum application must be read in conjunction with the statutes and regulations that permit motions to reopen. In other words, a successive asylum application can only be applied for within the 90 days of a motion to reopen and before the entry of a final order of removal. So in this case, in Mr. Lee's case, since his 90 days have clearly expired, the Board already entered a final order of removal. So if you're going to join a church after you've been ordered, deported, or if you're going to join a political party or an exile group or whatever and say, now, now, if I get deported, I'll be in trouble, you've got to do it within 90 days? It has to be done within a motion to reopen. A successive asylum application must be filed within a motion to reopen. Those, the regulations governing motions to reopen and successive And that has to be done within 90 days? Unless you meet one of the exceptions, which in this case he's claiming the changed country conditions. And in this case, just like the He case, that exception does not apply. He takes care of that. It says the country didn't change, he did. Correct. It was a self-induced change. Just like the birth of a child, him joining the religion was a self-induced change and not a change in his country of origin, not a change because China didn't change, he did. Let me ask you a crazy hypothetical. I just want to test what the limits of this are. Suppose someone is involved in a traffic accident and becomes paraplegic, quadriplegic, and it's an involuntary thing, didn't convert to a religion, didn't go out and have a baby, but suffered some kind of medical condition. It's a change in that person's personal circumstances, not in the country of origin. But suppose the country of origin persecutes quadriplegics. What do we do in that case? Totally involuntary change in personal circumstances. And it was outside of the 90-day requirement? Right. Well, first I would submit that those aren't the facts that we have here. Yeah, I know. I know it's not. In that case, it clearly wasn't self-induced. However, it still was a change in personal circumstances. I'm not exactly sure how that would work. I guess what I'm asking is, shouldn't our rule be that when you voluntarily change your personal circumstances, you can't come back and ask for asylum and claim change in country to involuntary changes in personal circumstances? For example, in the He case, suppose someone is raped and has a child. That's not a voluntary thing. I would submit that in He and in this case, they were both voluntary changes. I know. I know. Mr. Lee wasn't forced. As for involuntary, I'm not sure. I don't know. Do they have some kind of exception for extraordinary personal events or conditions or hardship or something that would deal with the quadriplegic or the rape victim? Not that I'm familiar with in the motion to reopen context. However, You understand that Judge Silverman was asking you not just in a motion to reopen context, but more generally. I understand and I would have to search it and get back to the court. So you're not saying that they don't. You're saying you don't know. Correct. I don't know. Okay. I'm interested in Judge Silverman's question because involuntary and voluntary are not always obvious distinctions. We have, for example, accidental pregnancies. It's not always the case that someone is pregnant because he or she chose, okay, we're going to have a child. And many people would say once having become pregnant involuntarily, that is to say by accident, it's not a choice within their moral universe to abort the child. So to say simply in he that, well, it's their choice to have another child. Well, it might have been in their case, but it's not always going to be the case in all cases of pregnancy. It's one might also say have a different version, but of the same argument with respect to religion. Some people, I think it's probably fair to say they are searchers and they go around. They kind of go from one church to another and decide that this is the religion that I believe in. Others, I'm not sure that that's so. This goes deeply into the notion of religious faith and religious truth. But I'm not sure you can always say, well, I voluntarily chose to be Catholic, whatever it's going to be. I mean, religion is not always simply a matter of voluntary choice. But it is a matter, in this case, of a personal circumstance. And the regulation, the exception to the untimeliness is clearly a change in country conditions. Yes. I understand that. But this is what I'm intrigued by Judge Silverman's question. And his is a nice clean example of an automobile accident which is a quadriplegic. I mean, there's nothing voluntary about that. And then assuming persecution, it does seem unfair that the rules would not allow consideration of that changed circumstance. But your answer may just be, well, okay, that may be right. But you better get a look at another regulation because here we're talking about changed country circumstances rather than changed personal circumstances. And voluntariness or involuntariness is not the criterion. And in this case, Your Honors, it was clearly a change in personal circumstance. It was Mr. Lee getting involved in this religion. And that change, just as in he, clearly does not fall within the exception of a changed country condition. He changed. There wasn't a change as Your Honor said previously. China has been persecuting this religion for years. It wasn't a change in China. And this was a very specific change with respect to Mr. Lee and his brother. Counsel, I don't know if you're understanding what the hypothetical questions are. They're not really about this case. They're about another case. I understand. Maybe I can ask one that you'll be able to help me on. He originally asked for asylum because of his organizing of workers' union and among the restaurant workers where he worked and getting abused and arrested and starved and all these things. He had dramatic inconsistencies in his story, was found not to be credible, and he did not appeal the decision that he was not credible. Does that have any bearing on this case or because the BIA did not decide this case on the basis that his new application lacked credibility, that we must ignore the adverse credibility determination? Well, with respect to whether it has a bearing on this case. I want to know, can we use credibility or can't we? What's the law? Should we assume that he's credible when he says, my heart is now in this religion, or should we assume that he's a liar? The board didn't make a credibility finding. It based its decision on the untimeliness and the fact that he didn't meet his expectations. So we never, the adverse credibility determination, we don't deal with that. And we don't use it, and it has no bearing. That case has a bearing to the extent that this is a motion to reopen, and we have to look at the time limitations. But in this case, we would look at the board's findings of the untimeliness, as well as the fact that he didn't meet an exception to the time limitation. Thank you, counsel. Thank you. Lee v. Gonzales has submitted. I want to hear from you. And we'll hear Singh v. Keisler. This is Tara Lock and Singh.
judges: Kleinfeld, Silverman, Fletcher